IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 3:18-MJ-407-BT |
| v. | |
| CHRISTOPHER A. FAULKNER | |

## BRIEF IN SUPPORT OF GOVERNMENT'S MOTION FOR DETENTION

The government is prepared to establish at the detention hearing the following facts demonstrating the defendant has been preparing to flee the United States to avoid prosecution and that he poses a serious risk of flight.

**I. Background**

Faulkner is charged by a criminal complaint with securities fraud, mail fraud, and money laundering stemming from a fraudulent oil and gas investment scheme he operated between 2009 and 2016 in Dallas, Texas. During this period, Faulkner raised approximately $70 million from investors for working interest programs through his companies, Breitling Oil and Gas and Crude Energy LLC. The total money raised from all investors was over $150 million.

The fraudulent scheme made Faulkner a wealthy man. According to financial analysis cited in the complaint, Faulkner received $23.7 million in cash disbursements and in personal charges to American Express Cards, while investors received total returns of approximately $6 million. This enabled Faulkner to enjoy an extravagant lifestyle.

**Brief in Support of Government's Motion for Detention, Page 1.**

On April 28, 2016, the FBI and IRS-CI executed a search warrant at Breitling's office in Dallas, Texas. On June 24, 2016, the SEC filed a civil complaint against Faulkner, his companies, and sales persons alleging securities fraud. Subsequently, in August 2017, the SEC obtained an asset freeze and appointment of a receiver.

Sometime around the execution of the warrant, Faulkner relocated from Dallas to Los Angeles. In Los Angeles, he began another fraudulent scheme called Homes, Inc., which raised money from investors to purchase and refurbish residences. On August 10, 2017, a magistrate in the Northern District of Texas issued a seizure order for $143,750 in a Homes Inc. bank account, finding that probable cause existed to show the funds constituted proceeds of mail and wire fraud. (Exhibit 1).

## II.  Since at least October of 2017, Faulkner has made plans to flee to Lebanon to avoid prosecution

On October 31, 2017, a FBI Confidential Human Source (CHS) reported to the FBI that he had been contacted by a person he knows as "Bennie" in Beirut, Lebanon. Bennie told the CHS that he had a friend, Chris Faulkner, in California who was in trouble and needed to flee the country. Bennie had agreed to help Faulkner. Bennie said Faulkner was currently selling assets including 5 or 6 exotic cars. Bennie also told the CHS that Faulkner has sent him several large "cashier's checks."

## III.  Faulkner's plans to flee have been assisted by his mother, Carole Faulkner.

Carole Faulkner is an attorney. For several years she has assisted Faulkner in moving assets and is currently assisting Faulkner's move to Lebanon. As described

**Brief in Support of Government's Motion for Detention, Page 2.**

below, several months ago, both she and Faulkner were held in civil contempt by District Judge Sidney A. Fitzwater for hiding assets from the court-appointed receiver for Breitling.

On April 5, 2018, Carole departed Dallas, flew to Beirut, and has not returned to the U.S. since that time. She booked two return flights to the United States, but failed to board either flight. Several days after she left, on April 10, 2018, her residence at 4010 Ambleside in Colleyville was listed for sale. It is currently on the market and according to the online photos appears to be empty of furniture. In December 2017, Carole Faulkner was terminated from her employment at Trend Micro in Dallas, Texas.

In July 2017, Carole assisted Faulkner in selling his residence at 8216 Inwood Road in Dallas that had been funded by fraudulent proceeds. Carole was an officer of Inwood Investments, Inc., a corporation that held title to the residence. She directed the net sale proceeds of $973,519.76 be wired to an account in the name of Inwood Investments at Frost Bank, Dallas. She then divided the funds into 16 cashier's checks made payable to either "Carole Faulkner" or "C.A. Faulkner."

On July 25, 2017, a magistrate judge in the Northern District of Texas issued a seizure warrant for 10 cashier's checks that had not yet cleared. (Exhibit 2). On July 28, 2017, agents served the seizure warrants simultaneously on Faulkner in Los Angeles and Carole in Dallas. Carole told the agents she had already sent the checks to Faulkner. Faulkner denied he knew where the checks were.

Two $20,000 cashier's checks were later cashed on January 4, 2018, after being presented for payment in London. Both checks bear the signature of Carole Faulkner. (See Exhibit 3, pages 5 and 6). The remaining checks have not been located; however, the SEC receiver has been successful in persuading Frost Bank to stop payment on them. The government believes these are the cashier's checks that Bennie was referring to in his first conversation with the CHS.

Most notably among the cashier's checks is a $700,000 check payable to "C.A. Faulkner." Both Faulkner and his mother share the same middle initial "A." In the district court's order finding both Faulkner and Carole in civil contempt (described below), Judge Fitzwater noted the testimony of the receiver regarding their fraudulent use of "C.A.":

> The Receiver testified that Carole and Faulkner have attempted to use this naming convention previously in fraudulently opening bank accounts to enable both to operate accounts opened in a single name. Carole and Faulkner also employ strikingly indistinguishable signatures on business documents, consisting of a single elongated "C."
> 
> *SEC v. Christopher A. Faulkner,* No. 3:16-cv-1735-D, (N.D. – Tx., February 13, 2018) (Dkt. 247 at 27) (Exhibit 4 at 27).

### IV. Bennie sends a copy of Faulkner's passport to the CHS to see if there were warrants or a flight risk for Faulkner

On May 16, 2018, the CHS reported to the FBI that Bennie told him he was still assisting Faulkner and that Faulkner's mother had already relocated to Lebanon. On May 16, 2018, Bennie sent the CHS by WhatsApp a copy of Faulkner's passport and stated in the text, "Hey hbb Can you find out if there's any warrants or flight risk put on Chris."

**Brief in Support of Government's Motion for Detention, Page 4.**

The CHS provided the FBI the text. (Exhibit 5). CHS stated that Bennie believed that the CHS had a contact with access to government databases.

The passport in the screenshot that Bennie sent to the CHS was issued to Faulkner on April 9, 2018. Faulkner applied for the passport by expedited service at the Los Angeles airport station on April 5, 2018, the same day that Carole left for Lebanon from Dallas. The application is accompanied by a sworn statement by Faulkner that he had lost his 2016 passport that same year in his move from Dallas to Los Angeles. Faulkner listed his mailing address as 4010 Ambleside Court, his mother's address in Colleyville that a few days later was listed for sale. The application packet also contained a copy of Faulkner's Texas Driver's license which he renewed in November 2017 also using his mother's Colleyville address.

The CHS told the FBI that Bennie said he was coordinating living arrangements for Faulkner's mother in Lebanon. Bennie also described how Faulkner's mother spent $4,000 at a grocery store and that Bennie and his friends made fun of the amount she spent. On May 31, 2018, Bennie contacted the CHS to see if he was interested in buying Faulkner's mother's house. Bennie texted to the CHS a link to the listing for 4010 Ambleside, which the CHS provided to the FBI.

### V.  Faulkner's attempt to leave the country when confronted by impending prosecution and a life sentence

Faulkner has been represented by his present counsel since April 2018. On May 2, 2018, the government met with Faulkner's counsel, without Faulkner, for a "reverse

proffer" in which the government previewed its case. As part of the reverse proffer, the government provided a written estimate of the applicable sentencing guidelines. It demonstrated that a conviction by trial would likely result in sentencing range of life imprisonment.

Faulkner was in Cancun on the day of the proffer and returned to Los Angles on May 5. On May 16, the CHS received from Bennie the image of the passport and the request concerning warrants and flight risk.

On June 4, 2018, the government extended a plea offer to Faulkner that included a term of imprisonment. The government requested Faulkner's response by June 15, 2018. On June 8, 2018, Faulkner's counsel requested an extension to the end of June. The government declined, but extended the deadline for one week until June 22, 2018.

On June 14, 2018, agents were notified that Faulkner had booked a flight on American Airlines to London Heathrow departing on Monday, June 18, 2018. The booking included a return flight to Las Vegas on June 24, and then to Los Angeles the next day.

The government obtained a complaint and warrant on June 15 and arrested Faulkner as he attempted to board the flight at LAX on June 18, 2018. Faulkner was carrying 10 one-ounce bars of gold, a number of gold coins, and $10,726 in cash. He had two computers, and an IPad. His papers included his birth certificate.

**Brief in Support of Government's Motion for Detention, Page 6.**

**VI.   Faulkner has a history of non-compliance with judicial orders and is unlikely to abide by terms and conditions.  He has altered evidence and concealed assets in defiance of judicial orders.**

As mentioned above, on February 13, 2018, in the SEC civil action against Faulkner, District Judge Sidney A. Fitzwater found both Faulkner and Carole Faulkner in civil contempt for violating the Court's order to turn over Breitling assets to the receiver. (*SEC v. Christopher A. Faulkner*, No. 3:16-cv-1735-D, (N. D. Tx., February 13, 2018). The court found Carole had opened a mail box which she failed to disclose to the receiver.  Faulkner then directed the US Postal Service to redirect Breitling mail to the new mail box.  Faulkner also contacted well operators to attempt divert Breitling revenue checks to the new mail box.  Faulkner was held in civil contempt for this conduct, but Carole was not. (*Id.* at 14).  In addition, Faulkner and Carole Faulkner were both held in civil contempt for preventing the receiver from accessing $210,000 in proceeds of the sale of company which was a receivership asset. (*Id.* at 29).

In November 2017, Carole Faulkner filed lawsuit against the receiver in California state court.  In his order, Judge Fitzwater found by clear and convincing evidence that she knowingly violated the Stay Provisions of the court's receivership order and held her in civil contempt.

Previously, in February of 2014, U.S. Magistrate Judge David Horan sanctioned Faulkner in a different civil lawsuit filed against him individually and Breitling for intentionally manipulating digital evidence so as to conceal the existence of a computer from being produced to a third party forensic expert.  In this case, Judge Horan ordered

**Brief in Support of Government's Motion for Detention, Page 7.**

that third party forensic expert have access and examine all computers Faulkner used for the year 2011. The resulting expert's report indicated alteration of the digital evidence that Faulkner had produced.

On February 12, 2014, the District Judge Jorge A. Solis affirmed Judge Horan's findings and imposed sanctions on Faulkner, finding that "Faulkner acted in bad faith when he materially altered (a computer) to make it appear that he used the computer for a number of years so as to conceal the Alienware computer from production." (See Exhibit 6 at 9). The District Court imposed monetary sanctions and ruled it would instruct the jury to "draw and adverse inference that a party who intentionally spoilated evidence did so in order conceal evidence that was unfavorable." *T.E. Investments Group LLC. v. Christopher Faulkner, et. al.,* No. 3:11-cv-724-P (N.D. Tx, February 12, 2014). (Exhibit 6).

### VI.    Conclusion

For these reasons this Court should grant the government's motion for detention.

Respectfully submitted,

ERIN NEALY COX
UNITED STATES ATTORNEY

 s/Christopher Stokes
Christopher Stokes
Assistant United States Attorney
Bar No. 19267600
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659- 8676
Email: Christopher.Stokes@usdoj.gov

**Brief in Support of Government's Motion for Detention, Page 8.**

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was served on counsel for the defendant in accordance with the Federal Rules of Criminal Procedure on this 9th day of July, 2018.

                                s/Christopher Stokes
                                Assistant United States Attorney